### J. R. Young, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 7439.   Promulgated March 30, 1927.

1. On the evidence, *held* that transfers of stock on December 31, 1920, were not *bona fide* sales and will not support a claim for loss on account of sales of stock.

2. Evidence *held* insufficient to prove worthlessness of a debt secured by corporate stock.

3. Evidence *held* insufficient to establish worthlessness of corporate stock.

*J. C. Peacock, Esq.*, for the petitioner.

*J. E. Marshall, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for the calendar year 1920 in the amount of $3,246.03.

The deficiency arises from the disallowance by the Commissioner of deductions claimed as losses and a deduction claimed as a bad debt.

### FINDINGS OF FACT.

The petitioner is an individual having his principal place of business at Charleston, S. C. During the fiscal year July 1, 1919, to June 30, 1920, he was a member of a partnership engaged in buying and selling cotton. His distributive share of the partnership profits for that period amounted to $79,162.20, represented by cotton on hand at the close of the fiscal year. This amount the petitioner reported as income in his return for the calendar year 1920. On July 1, 1920, the business was incorporated under the name of J. R. Young & Co., Inc., in which the petitioner received stock for his share of the partnership profits. He received no cash for his share of the profits of the partnership. He invested additional funds in the corporation for which stock was issued to him, making his holdings 936 shares in 1920, of a total capitalization of 1,250 shares.

The greater part of the assets of the partnership turned in for stock of the corporation consisted of extra-staple cotton, which at that time sold for $1 to $1.25 per pound. By the end of the year the price for that grade of cotton had dropped to about 20 cents per pound, which resulted in greatly decreasing the value of the capital stock of the Young corporation, which the taxpayer owned.

On December 31, 1920, the petitioner transferred to the persons listed the following corporate stocks:

| Stock. | Transferee. | Price. | Cost. | Claimed loss. |
|---|---|---|---|---|
| J. R. Young & Co., Inc. | W. T. Smith | $23,400 | $93,600 | $70,200 |
| Automobile Tire & Equipment Co. | J. E. Malloch | 250 | 500 | 250 |
| Sea Island Cotton Oil Co. | J. E. Malloch | 50 | 500 | 450 |
| J. O. Freeman Co. | S. J. Hasell | 1,230 | 12,300 | 11,070 |
| Kiawata Co. | S. M. Hasell | 250 | 500 | 250 |
| Dry Fork Timber Co. | S. M. Hasell | 1,500 | 3,000 | 1,500 |
| Zwixite Corporation | S. C. Guilds | 500 | 2,000 | 1,500 |
| Total claimed loss | | | | 85,220 |

The amount of $85,220 was claimed by the petitioner as a loss in his income-tax return for the year 1920.

In each of the above transactions the petitioner delivered endorsed stock certificates to the transferee and received in exchange the transferee's check in the amount listed. The stock was not transferred on the books of the several corporations.

The petitioner and W. T. Smith were the sole stockholders in W. T. Smith Cotton Co. in 1920, the petitioner owning a controlling interest. On delivery of the J. R. Young & Co. stock to him on Friday, December 31, 1920, Smith gave to the petitioner his check

dated the same date in the amount of $23,400. Smith's bank balance on that date was about $500. On the next succeeding business day, Monday, January 3, 1921, the petitioner deposited Smith's check, which was endorsed on the following day, January 4, 1921, by the petitioner's bank, the Bank of Charleston, for collection through the Charleston Clearing House. On the same day as the deposit of the check, January 3, 1921, Smith transferred the stock back to the petitioner at the same price at which he had taken it over.

In each of the other transactions listed above the transferee gave the petitioner a check dated December 31, 1920, which the petitioner deposited on January 3, 1921. In each case the stock was transferred back to the petitioner within from 30 to 60 days after the end of the year 1920 at the same price at which the petitioner had transferred it. All of the transferees listed above were business acquaintances of the petitioner.

The above-listed transfers of stock were made for the purpose of permitting the petitioner to offset against his profits for the first six months of the year 1920 the shrinkage in the value of his stock in J. R. Young & Co., Inc., which occurred in the last half of the year. The commissioner disallowed the deduction of $85,220 claimed as a loss on the sale of stock by the petitioner.

In 1920, J. O. Freeman was indebted to the petitioner in the sum of $9,700, for which the petitioner held Freeman's note and as collateral security, about 1,200 shares of stock of the J. O. Freeman Co. The company lost money in 1920 and was liquidated about 1922. Freeman did not pay the debt in 1920. The petitioner requested payment but made no effort to enforce collection, being of the opinion that any such action would be useless, as Freeman had no property. The Commissioner disallowed the deduction of the Freeman indebtedness claimed by the petitioner in his return for 1920.

In 1920, the J. R. Young corporation, of which the petitioner was president, purchased stock to the amount of $5,000 in a corporation operating a warehouse in Atlanta. The stock was issued in the name of J. R. Young & Co., Inc., and charged as an expense on its books. Within 30 days thereafter the petitioner found that the warehouse company was in financial difficulties and before the close of the year he caused the amount which had been paid for the stock to be charged to his personal account. The warehouse company at that time had receipts outstanding for more cotton than it had in storage. It subsequently went into the hands of a receivers' committee and the stock became worthless in the year 1920.

The amount of $5,000 was claimed as a loss by the petitioner in his return for 1920 and was disallowed by the Commissioner.

ARUNDELL: The transactions through which the petitioner claims to have sustained deductible losses on sales of stock do not bear the marks of *bona fide* sales. The transfers were made to persons who appear to be, as said in *Appeal of Harold B. Clark*, 2 B. T. A. 555, " accommodation " purchasers rather than *bona fide* purchasers. The evidence in this case does not satisfy us that the petitioner parted with the stock " for the purpose of absolutely getting rid of the stock " nor that any of the transferees obtained it " for the purpose of absolutely acquiring it as his own." *Appeal of Clark, supra*.

Nor does the evidence in this case establish that the petitioner had ascertained that the Freeman debt of $9,700 was worthless in 1920. While there is some evidence that the stock of the Freeman Company held as security for Freeman's note had depreciated in value during the year, it does not show that the stock was worthless. In fact, there is an obvious inconsistency in the claims of the petitioner in that, with respect to this item, he says that the stock was worthless, while with respect to the transfers of stock made on December 31, 1920, he claims to have made a *bona fide* sale of a block of the Freeman Company stock at a price of $1,230.

The amount of $5,000 which the Young corporation paid for stock in an Atlanta warehouse company, was charged to the petitioner's personal account on the books of the corporation when it was discovered in 1920 that the stock was worthless. There is nothing in the record to show that the petitioner reimbursed the corporation for this item either through funds on deposit which were reduced by the charge or by actual payment. A mere charge of the item to him does not establish a loss in the taxable year and is not sufficient to support the petitioner's claim for a deduction of the amount.

*Judgment will be entered for the respondent.*